**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**TINA SUFFAL, ET AL**                                   **CIVIL ACTION**


**VERSUS**                                               **NO: 14–2478**


**JEFFERSON PARISH, ET AL**                              **SECTION: "H" (3)**


## <u>ORDER AND REASONS</u>

Before the Court are a Motion to Dismiss filed by Defendant Jefferson Parish (Doc. 6), a Motion to Dismiss filed by Defendants Correcthealth Jefferson, LLC ("Correcthealth") and Stacy Greene (Doc. 7), and a Motion for Judgment on the Pleadings filed by Correcthealth, and Stacy Greene (Doc. 10). For the following reasons, Jefferson Parish's Motion to Dismiss is DENIED AS MOOT, Correcthealth and Dr. Greene's Motion to Dismiss is GRANTED, and the Motion for Judgment on the Pleadings is GRANTED IN PART.

1

## BACKGROUND[1]

Plaintiffs are the surviving mother and children of Eric Suffal. Mr. Suffal died on July 28, 2013, as a result of a perforated duodenal ulcer, acute peritonitis, and a brain herniation allegedly sustained while he was incarcerated in the Jefferson Parish Correctional Center ("JPCC"). Suffal was booked into the JPCC on July 11, 2013. At that time, he reported to the staff of the JPCC that he had ingested rat poison over a period of three days prior to his incarceration. After evaluating Suffal, the staff of the JPCC determined that he presented a high risk of suicide, admitted him to the infirmary, and placed him on suicide watch. Suffal remained in JPCC custody until July 24, 2013, when he was found unresponsive and drooling in his cell. He was transferred to the LSU Interim Public Hospital, where he died four days later. This suit followed.

Plaintiffs allege that Defendants Sheriff Normand, Correcthealth (the medical provider at the JPCC), and Dr. Stacy Greene (the medical director at the JPCC) were deliberately indifferent to Suffal's serious medical needs in violation of 42 U.S.C. § 1983 and the Eighth Amendment, that Defendants failed to provide reasonable accommodations for his disability in violation of the Americans with Disabilities Act, and that Defendants are liable for various state law torts, including medical malpractice. Plaintiffs initially named Jefferson Parish as an additional Defendant but have since filed an amended complaint removing all claims against Jefferson Parish. Defendants Jefferson Parish, Correcthealth, LLC, and Dr. Greene seek dismissal of Plaintiffs' claims with

---

[1] The facts are drawn from Plaintiffs' Complaint and presented in the light most favorable to Plaintiffs. *See Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

2

prejudice.

## LEGAL STANDARD

Rule 12(c) provides that a party may move for judgment on the pleadings, after pleadings are closed but early enough not to delay trial.[2] The standard for determining a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.[3] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[4] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[6] The court need not, however, accept as true legal conclusions couched as factual allegations.[7] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[8] The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[9] If it is apparent from the face of the

---

[2] Fed.R.Civ.P. 12(c) (2014).

[3] *Guidry*, 512 F.3d at 180.

[4] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[5] *Id.*

[6] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[7] *Iqbal*, 556 U.S. at 678.

[8] *Id.*

[9] *Lormand*, 565 F.3d at 255–57.

complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[10] The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[11]

## LAW AND ANALYSIS

The Court will address each of the three Motions in turn.

### I. Jefferson Parish's Motion to Dismiss (Doc. 6)

Plaintiffs' initial Complaint purported to assert claims against Jefferson Parish.  The Amended Complaint, however, does not assert any claim against the Parish. "[A]n amended complaint supersedes original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."[12]  Thus, the Court construes the amendment as a request to voluntarily dismiss the Parish.[13] Nonetheless, Jefferson Parish asks this Court to construe the amendment as an admission that Plaintiffs have no viable claim against it and to dismiss it with prejudice.  This request is denied.  A plaintiff generally has an absolute right to

---

[10] *Jones v. Bock,* 549 U.S. 199, 215 (2007).

[11] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[12] *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n.2 (5th Cir. 2010) (internal quotations omitted).

[13] *See Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp. 2d 623, 628 n.2 (S.D. Tex. 2007) (construing an amendment as a voluntary dismissal).

voluntarily dismiss a claim before the opposing party serves an answer or motion for summary judgment.[14]  "Moreover, the first time a plaintiff voluntary dismisses his claim, it is without prejudice."[15]  Jefferson Parish has filed neither an answer nor a motion for summary judgment.  Therefore, the Court construes Plaintiffs' amendment as a voluntary dismissal of Jefferson Parish.  Accordingly, Jefferson Parish is dismissed without prejudice, and the Motion to Dismiss is denied as moot.

## II. Correcthealth and Dr. Greene's Motion to Dismiss (Doc. 7)

Correcthealth and Dr. Greene move to dismiss Plaintiffs' claims, to the extent that they arise under the Louisiana Medical Malpractice Act as premature.  Defendants argue, and Plaintiffs concede, that Louisiana law requires that all medical malpractice actions be presented to a medical review panel prior to the institution of litigation.[16]  Indeed, Plaintiffs requested a medical review panel in connection with this matter and concede that the medical malpractice claims are premature.  Therefore, the medical malpractice claims against Correcthealth and Dr. Greene are dismissed without prejudice as premature.

## III. Correcthealth and Dr. Greene's Motion for Judgment on the Pleadings (Doc. 10)

Correcthealth and Dr. Greene contend that Plaintiffs have failed to allege

---

[14] *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324 (5th Cir. 2005) (citing Fed. R. Civ. Pro. 41(a)(1)).

[15] *Yesh Music v. Lakewood Church*, 727 F.3d 356, 359 (5th Cir. 2013).

[16] *Thibodeaux v. Donnell*, 9 So. 3d 120, 123 (La. 2009).

facts sufficient to support a claim pursuant to section 1983 and the Eighth Amendment.  "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs."[17]  "The mere delay of medical care can also constitute an Eighth Amendment violation but only if there has been deliberate indifference that results in substantial harm."[18]  "A prison official acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it."[19]  "A showing of deliberate indifference requires the inmate to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[20]

While "[d]eliberate indifference is an extremely high standard to meet,"[21] Plaintiffs have pled sufficient facts to support such a claim in this case. Specifically, Plaintiffs allege that the staff of JPCC knew on July 11 that Suffal posed a high risk of suicide and that he had ingested rat poison over a three day period.  During an exam on July 17, medical staff noted that Suffal's abdomen was tender.   By July 19, Suffal was complaining of headaches, sleep

---

[17] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

[18] *Id.* (internal quotations omitted).

[19] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

[20] *Clark v. Adams*, 233 F. App'x 400, 401 (5th Cir. 2007) (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

[21] *Gobert*, 463 F.3d at 346.

disturbances, and was refusing food.  On July 21, Suffal's condition began to rapidly deteriorate.  He experienced nausea, vomiting, and was unable to finish his meals.  On July 22, Dr. Greene examined Suffal and noted that he had been experiencing nausea and vomiting for several weeks (i.e. since he had ingested the rat poison).  By the end of the day on July 22, Suffal was no longer able to stand.  JPCC staff did not send Suffal to the hospital until the morning of July 24, after he was found unresponsive in his cell.

Dr. Greene's failure to send Suffal to the hospital on July 22 does not, however, rise to the level of a constitutional violation unless Dr. Greene was deliberately indifferent to Suffal's medical needs and Suffal suffered harm as a result of the delay in seeking treatment.  Plaintiffs allege that Suffal died as a result of the delay, thus the remaining question is whether Plaintiffs have alleged that Dr. Greene was deliberately indifferent.

Plaintiffs allege that Dr. Greene knew on July 22 that (1) Suffal had ingested a quantity of rat poison in the days prior to his incarceration, (2) Suffal was exhibiting symptoms of abdominal pain, nausea, and vomiting, and (3) other than the rat poison, there was no plausible explanation for these symptoms. These facts support an inference that Dr. Greene knew Suffal faced an obvious risk of bodily harm.  Additionally, Plaintiffs allege that Dr. Greene disregarded the risk to Suffal's health by failing to take any action until Suffal was totally unresponsive.  Accordingly, the Court concludes that Plaintiffs have pled facts sufficient to support a deliberate indifference claim.

For their part, Defendants argue that some of Plaintiffs' factual allegations

7

are incorrect and that they provided Suffal some medical treatment, thus defeating a deliberate indifference claim.  Both arguments are rejected.  While Defendants may disagree with Plaintiffs' description of the facts, the Court is required at this stage of the proceedings to accept Plaintiffs' factual allegations as true.  Moreover, Defendants may not escape liability merely by providing some treatment to Suffal, if Defendants' failure to provide additional treatment constitutes deliberate indifference.[22]

Finally, Correcthealth argues that it cannot be held vicariously liable for the actions of Dr. Greene unless Plaintiffs can demonstrate that Suffal's injuries were the result of a constitutionally deficient custom, policy, or practice.  The Court agrees.  "Section 1983 does not create supervisory or *respondeat superior* liability.  The individual officials may be liable only for implementing a policy that is itself a repudiation of constitutional rights and the moving force of the constitutional violation."[23]   The Amended Complaint contains numerous conclusory allegations that Correcthealth implemented various policies and procedures that ultimately injured Suffal, but fails to include any facts regarding the nature of these alleged policies, much less a description of how they are constitutionally deficient.   Accordingly, the section 1983 claim against Correcthealth is dismissed without prejudice.[24]  Plaintiffs are granted leave to

---

[22] *See, e.g.*, *Monceaux v. White*, 266 F. App'x 362 (5th Cir. 2008) (holding that nurse was deliberately indifferent to plaintiff's serious medical needs when she treated plaintiff's injury herself instead of calling a physician).

[23] *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

[24] This does not, however, mean that Correcthealth is dismissed as a defendant from this action.  Plaintiffs also assert several state law claims against it.  Those claims remain pending.

amend their complaint within 20 days of this Order if they can allege facts supporting a section 1983 claim against Correcthealth.

## CONCLUSION

For the foregoing reasons, Jefferson Parish's Motion to Dismiss is DENIED AS MOOT, Correcthealth and Dr. Greene's Motion to Dismiss is GRANTED, and the Motion for Judgment on the Pleadings is GRANTED IN PART. Jefferson Parish is DISMISSED WITHOUT PREJUDICE, Plaintiffs' claims pursuant to the Louisiana Medical Malpractice Act are DISMISSED WITHOUT PREJUDICE as premature, and Plaintiffs' section 1983 claims are DISMISSED as to Correcthealth only.

New Orleans, Louisiana, this 12th day of February, 2015.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**